UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NATIONAL PRODUCTS INC, <br><br> Plaintiff, <br><br> v. <br><br> OPTEKA, INC, <br><br> Defendant. | CASE NO. C18-1248 MJP <br><br> ORDER ON MOTION TO TRANSFER |

The above-entitled court, having received and reviewed:

1. Defendant's Motion to Transfer (Dkt. No. 18),

2. National Products Inc.'s Response in Opposition to Defendant's Motion to Transfer (Dkt. No. 26),

3. Defendant's Reply Brief in Support of Motion to Transfer (Dkt. No. 29),

all attached declarations and exhibits, and relevant portions of the record, rules as follows:

IT IS ORDERED that the motion is DENIED.

IT IS FURTHER ORDERED that the stay previously entered in this matter (*see* Dkt. No. 25) is LIFTED; the parties are ordered to file a Joint Status Report in accordance with the Order Regarding Joint Status Report (Dkt. No. 13) within 14 days of the filing of this order.

**Background**

Plaintiff (National Products, Inc.; "NPI") and Defendant (Opteka, Inc.; "Opteka") are both owners of a disputed trademark on a camera accessory called an "X-Grip." On March 18, 2018, Defendant initiated a trademark infringement lawsuit against Plaintiff in the Eastern District of New York. Opteka then withdrew the lawsuit and removed the dispute to the Trademark Trial and Appeal Board ("TTAB). On August 23, 2018, Plaintiff filed its lawsuit here.

Defendant asserts that it has no contacts with the State of Washington and is not subject to personal jurisdiction here. It further argues that venue is not proper in this district.

**Discussion**

Personal Jurisdiction

Plaintiff asserts that personal jurisdiction over Defendant exists in this district. (Dkt. No. 1, Complaint at ¶ 7.) The Ninth Circuit's three-prong test for the exercise of specific personal jurisdiction is well-known. The first prong requires that "[t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." Yahoo! Inc. v. LaLigue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1205-06 (9th Cir. 2006).

The determination of whether a defendant has "purposefully direct[ed] his activities" at the forum state is subjected to an "effects" test focused on whether the defendant's actions were *felt* (not necessarily "occurred") within the forum. Id. at 1206 (*citing* Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 803 (9th Cir. 2004)). The "effects test" analyzes whether a defendant "(1) committed an intentional act (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Id.

The second prong of the specific jurisdiction test inquires into whether the claim is "one which arises out of or relates to the defendant's forum-related activities." Id. It is a "but for" test of causation. Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1088 (9th Cir. 2000).

The third prong requires that "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." Yahoo!, 433 F.3d at 1206. If the Court is satisfied that the first two prongs have been met, the burden shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would be "unreasonable" and violative of due process. Amazon.com, Inc. v. Nat'l Assoc'n of Coll. Stores, Inc., 826 F.Supp.2d 1242, 1255 (W.D.Wash. 2011).

Defendant provides a lengthy laundry list of facts detailing its lack of contacts with Washington, including the facts that it has no distributors in the state, has no office here, and is not registered to do business here. It attempts to rebut Plaintiff's personal jurisdiction argument – most specifically, that Opteka contacted Amazon.com with multiple complaints/requests to "de-list" Plaintiff's "X-Grip" products – by claiming that the requests to take down the allegedly infringing products came from "independent companies that distribute Opteka's products and not… Opteka." (Motion at 6.)

To call Defendant's denials inaccurate would be kind.  Plaintiff has produced a series of email exchanges between distributors of its products and Amazon wherein Amazon, in refusing to rescind its de-listing of the NPI products, identifies the originators of the takedown requests and instructs the NPI distributors to, essentially, work it out with them.  (*See* Dkt. Nos. 28-1 to 28-18, Exs. 1-18.)

The parties identified in the Amazon emails are:

- William Mattia: Defendant claims that Mattia is
    - "the only individual who contacted Amazon" (Dkt. No. 29, Reply at 2)**.**  The most cursory reading of Plaintiff's evidence indicates this is untrue: there are at least two contacts identified from Ronny Shmoel (owner/CEO of Defendant), and several from legal@royalgroupint.com (*see infra* regarding "Royal Group International")
    - "[N]ot an employee of Opteka" – whether or not Mattia is an "employee" in the strict sense of the term, he is at least an agent of Defendant's, an agent who claimed in more than one of the email exchanges with NPI distributors impacted by the de-listing that "*[w]e* are the brand owners of 'Opteka' and own the trademark to 'Opteka' and 'X-Grip'"… (Dkt. Nos. 28-2 and 28-16; emphasis supplied) and whose email address and email logo identified him as an employee of "Circuit City," a brand name purchased by Shmoel.
- Ronny Shmoel: owner/CEO of Opteka, whose name appears on two of emails from Amazon as the person who originated takedown requests.  (Dkt. Nos. 28-5 and 28-7.)

- "legal@royalgroupint.com": A Buzzfeed News online article about Shmoel in February 2016 cited an email from him stating that "Opteka is a global sourcing company [Shmoel] owns that's now called Royal Group International." (Dkt. No. 28-24.)

It is difficult to understand how Defendant can maintain its insistence that Opteka had nothing to do with the de-listing demands made to Amazon in the face of this evidence, and its briefing contains no rebuttal to these facts.

Opteka next tries to evade a finding of specific jurisdiction by arguing that the second and third prongs of the "effects test" (an intentional act (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state) cannot be satisfied because it had no way of knowing that any of the vendors impacted by the takedown order were based in Washington. It is of no import whether Defendant knew that the vendors affected by its de-listing request were based in Washington; Opteka knew that NPI was based in Washington (*see* Dkt. No. 20-1, a copy of the Opteka complaint filed in E.D.N.Y. wherein it identifies NPI as a "Washington-based corporation;" Dkt. No. 20-1 at 2, ¶ 5) and it will not be heard to argue that it did not believe that the harmful effect of its efforts would be suffered by NPI in this state.[1]

The first prong of the test for specific jurisdiction ("purposeful direction") is thus satisfied. The second prong (whether the claim is "one which arises out of or relates to the defendant's forum-related activities") is satisfied by a "but for" analysis – even though this is a trademark infringement dispute, *but for* Opteka attempting to enforce its trademark claims

---

[1] At least three of the emails submitted by NPI as evidence of the takedown requests and its distributors' attempts to get the takedowns lifted were generated prior to NPI filing this lawsuit, so Opteka's argument that activity after the filing of the complaint does not count for jurisdictional purposes does not suffice to evade jurisdiction in this district. (*See* Exs. 28-1 to 28-3.)

through takedown requests to (Washington-based) Amazon impacting (Washington-based) NPI, this dispute would not be before this Court.

That leaves only the third prong – whether the exercise of jurisdiction would be "unreasonable" and violative of due process. As mentioned *supra*, the burden shifts to Defendant to "present a compelling case" in this regard. The Court finds it has not succeeded in doing so -- the factors considered by the Ninth Circuit still tilt in Plaintiff's favor:

1. "[T]he extent of the Defendants' purposeful injection into the forum state's affairs" is demonstrated by the repeated takedown requests addressed to Amazon and impacting NPI.
2. "[T]he burden on the Defendant of defending in the forum:" Defendant appeals to the "vast difference in sizes" between the two companies (Opteka is allegedly a two-person operation, NPI employs 360 people) and while that figure alone might tilt this factor toward Defendant, Opteka provides no financial statements to back up its claim and so simply invites the Court to speculate which company is the more resourced.
3. "[T]he extent of the conflict with the sovereignty of the Defendant's state:" Neither side really addresses this factor; it is not obvious to the Court how New York's sovereignty is threatened by this dispute.
4. "[T]he forum state's interest in adjudicating this dispute:" Given that the trademark rights of a Washington company and the effect of the dispute on Amazon and other Washington-based resellers of NPI products are at stake, this factor favors Plaintiff.
5. "[T]he most efficient judicial resolution of the controversy:" Again, neither side addresses this factor and the Court considers this a non-factor in this decision.

1. 6. "[T]he importance of the forum to the plaintiff's interest in convenient and effective relief:" With NPI based in this state and "the bulk of knowledgeable witnesses and relevant evidence" present in this state (Response at 13), this factor favors Plaintiff.
2. 7. "[T]he existence of an alternative forum:" There is no question that the case could be tried elsewhere if need be.

On balance, the Court finds that the "reasonableness" factors weigh in favor of Plaintiff's choice of forum. Plaintiff has established that this Court has personal jurisdiction over Opteka.

## Transfer

Notwithstanding the existence of personal jurisdiction over Defendant, it is still within the Court's discretion, under 28 U.S.C. § 1404, to transfer the case to a more convenient venue. Such discretion should only be exercised where Defendant has made "a strong showing of inconvenience," and the Ninth Circuit employs a balancing test (*see* Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000)) which considers the following factors (to the extent they are applicable):

1. Location of negotiation and execution of "relevant agreements:" Both sides agree there are no "relevant agreements" here.
2. The state "most familiar with the governing law:" Defendant does a Westlaw search to compare numbers of rulings on "trademark infringement" – New York "wins," although considering it is a more populous state, that is hardly surprising or determinative. The Court does not consider the issue of "familiarity" to simply be a numbers game – trademark infringement law is not particularly complex and this Court is fully capable of applying the appropriate legal analysis.

3. "[P]laintiff's choice of forum:" Plaintiff points out that in the Ninth Circuit this factor "receives substantial deference." Jinni Tech Ltd. v. Red.com, Inc., No. C17-0217JLR, 2017 WL 4758761 (W.D. Wash. Oct. 20, 2017) at *11 (*quoting* Decker Coal, 805 F.2 at 843). The Court does not accept Opteka's argument that, as the filer of the first (voluntarily dismissed) lawsuit, it is the actual "plaintiff" whose choice of forum should prevail.

4. The parties' contact with the forum: NPI – headquartered in Seattle – obviously has significant contacts here and (aside from offering its products for sale in all 50 states via the internet) no significant contacts with New York. Defendant argues that it has no contacts with Washington, but its campaign to de-list NPI "X-Grip" products from Seattle-based Amazon argues otherwise.

5. Contacts "relating to the plaintiff's cause of action" in the forum: while Plaintiff focuses on the Amazon incidents to make its point here, the Court agrees with Defendant – this is a trademark infringement action and nothing that happened with Amazon "relates" to this cause of action except as a "symptom" of the parties' trademark dispute.

6. The differences in the cost of litigation between forums: no one offers any evidence of what litigation costs in the respective jurisdictions are (NPI does cite Business Travel News' annual Corporate Travel Index for proof that New York City is the most expensive city for business travel), although courts disfavor venue transfers where "transfer would merely shift rather than eliminate" costs and inconvenience. Jinni Tech, 2017 WL 4758761, at *12 (*citing* Decker Coal, 805 F.2d at 843).

7. Availability of compulsory service to compel attendance of unwilling non-party witnesses: NPI cites its own officers and employees as potential witnesses (though they

are obviously not "non-parties"), but also witnesses from Washington-based resellers impacted by the Amazon takedown orders and employees of Amazon who processed the de-listing requests as potential witnesses who could not be compelled to testify outside this jurisdiction. Opteka presents no proof of non-party witnesses whose location places them outside the company's power to compel their attendance.

8. Ease of access to sources of proof: The vast majority of NPI's witnesses are in this jurisdiction, as are all their documents related to registration of the trademark. Opteka makes no showing in regard to this factor.

9. Public policy considerations: Plaintiff cites Washington's interest in "providing a forum for [its] injured residents," and the "local interest in having localized controversies decided at home." Jinni, id. Defendant again makes no showing in regard to this factor.

On balance, the Court finds that an analysis of these factors does not result in a "strong showing" of inconvenience to Defendant. Venue remains proper in this district.

**Conclusion**

The Court is satisfied that personal jurisdiction exists over Defendant, and that venue is proper in this district. Defendant's motion to transfer is therefore DENIED. The stay previously entered in this matter (Dkt. No. 25) is LIFTED, and the parties are ordered to file a Joint Status Report in accordance with the Order Regarding Joint Status Report (Dkt. No. 13) within 14 days of the filing of this order.

The clerk is ordered to provide copies of this order to all counsel.

Dated February 12, 2019.

Marsha J. Pechman
United States Senior District Judge